## UNITED STATES *v.* RIDER.

### APPEAL FROM THE COURT OF CLAIMS.

No. 510.   Argued February 23, 1923.—Decided March 19, 1923.

1. The Act of June 15, 1917, c. 29, 40 Stat. 188, in making a deficiency appropriation for "pay at $100 per month for enlisted men in training for officers of the Reserve Corps," intended merely to abolish the discrimination existing between the pay then allowed enlisted men and that allowed civilians training in like circumstances; it was not a fixing of base pay.  P. 367.
2. Consequently, a first class private in the Aviation Section of the Signal Enlisted Reserve Corps, who, before this act received $33 per month as base pay and 50% additional for flight duty, under the Act of July 18, 1914, c. 186, 38 Stat. 516, was not entitled to any allowance for such duty in addition to the monthly pay of $100.  *Id.*
3. This provision for $100 pay was not continued beyond June 30, 1918, the limit of the Act of June 15, 1917, *supra*, making the appropriation.  P. 368.

57 Ct. Clms. 323, reversed.

APPEAL from a judgment of the Court of Claims allowing in part a claim for additional Army pay.

*Mr. James A. Fowler,* with whom *Mr. Solicitor General Beck, Mr. Assistant Attorney General Lovett* and *Mr. John G. Ewing* were on the briefs, for the United States.

*Mr. Henry W. Driscoll,* with whom *Mr. Harvey D. Jacob* and *Mr. Richard P. Whiteley* were on the brief, for appellee.

Mr. Chief Justice Taft delivered the opinion of the Court.

Nelson W. Rider, the plaintiff below, was a first class private in the Aviation Section of the Signal Enlisted Reserve Corps from the date of his enlistment, November 22, 1917, until September 13, 1918, when he accepted a commission as a Second Lieutenant in Air Service Aeronautics. His suit is for pay additional to that received by him while he was a first class private. He asked in his petition for a judgment for $381.42. The Court of Claims gave him judgment for $326.22. He was paid from February 9, 1913, until June 30, 1918, at the rate of $100 a month, from July 1 to September 13, 1918, at the rate of $49.50 a month, i. e., $33.00 as base pay and $16.50 as additional pay for flight duty. He began flight duty on May 12, 1918. Rider claims first $100 a month down to September 13, 1918, when he became an officer, second, fifty per cent. of that sum in addition while on flight duty from May 12, 1918, until September 13, and, third, $6.00 additional pay per month from February 9 to September 13, and fifty per cent. of that in addition on flight duty from May 12 to September 13. This third claim was disallowed by the Court of Claims and as Rider has taken no appeal from this ruling, we need not consider it.

On the peace establishment first class privates of the Signal Corps received $18.00 a month. Act of May 11, 1908, 35 Stat. 109. This was increased when we entered the war so as to make the pay $33.00. Act of May 18, 1917, 40 Stat. 82. The Aviation Section of the Army was established as a branch of the Signal Corps by the Act of July 18, 1914, 38 Stat. 514, 516, and by its terms the officer in command could instruct twelve enlisted men in the art of flying but no enlisted man could be assigned to duty as a flyer against his will except in time of war, and while on flight duty he was to receive an increase of fifty per

centum in his pay. This increased the pay of enlisted men on flight duty at that time from $18.00 to $27.00 monthly, and when we entered the war in 1917 from $33.00 to $49.50. By the National Defense Act of June 3, 1916, 39 Stat. 166, 174, 175, the Secretary of War under the provisions for the Signal Corps was authorized to cause as many enlisted men to be instructed in the art of flying as he deemed necessary.

To understand how the pay of the plaintiff herein became $100 a month as an enlisted man, we must revert to the history of the training camps. In 1915, the War Department, responding to a popular agitation for preparedness, on its own initiative and without legislative authority organized training camps where civilians were given military instruction. Those who attended were required to pay transportation and subsistence, to buy their uniforms and to serve without pay. Legislative authority was given for these camps in § 54 of the National Defense Act of June 3, 1916, 39 Stat. 194. This provided transportation, uniforms and subsistence but no pay. The Army Appropriation Act of August 29, 1916, 39 Stat. 648, gave funds for future camps for the fiscal year 1917 and authorized reimbursement for transportation and subsistence to persons who had attended camps prior to the Act of June 3, 1916. (See 23 Comp. Dec. 217.) Such was the state of legislation when the war began, April 6, 1917. At this time, civilians and enlisted men of the Regular Army and of the National Guard in federal service were being sent to training camps to become officers. The civilians received no pay. The enlisted men received the pay of their respective grades. By the Appropriation Act of May 12, 1917, 40 Stat. 69, 70, an appropriation of more than three millions of dollars was made to enable the Secretary of War to pay to civilians designated by him for training as officers not exceeding $100 a month as pay, provided they would agree to

accept appointment in the Officers Reserve Corps in such grade as might be tendered.

In the Act of June 15, 1917, 40 Stat. 188, there was, under the heading of "enlisted men of the line" the following:

. "For pay of enlisted men of all grades, including recruits, and pay at $100 per month for enlisted men in training for officers of the Reserve Corps, $226,882,560."

This, as said, was a deficiency appropriation and therefore did not authorize pay at the rate of $100 beyond June 30, 1918. It was obviously passed to put enlisted men on a level with civilians going through the same training for commissions in the Reserve Corps. ·

The training camps for officers to which this appropriation then applied had been established by War Department Special Regulations No. 49, and included only training for commissions in the Infantry, Cavalry and Artillery. Training schools for the Aviation Section were not included within those regulations. In such schools, satisfactory students were recommended for commissions by the Chief Signal Officer but they were not embraced under No. 49 and were likely not to be paid the $100 a month provided by the Act of June 15, 1917. The Chief Signal Officer and the Adjutant General brought this discrimination to the attention of the Secretary of War (26 Comp. Dec. 117) who then directed by order of July 13, 1917, that enlisted men of the Signal Enlisted Reserve Corps admitted to the Signal Corps Aviation Schools, should be considered as designated for training as officers of the Army and put on the same footing as to pay and allowances as enlisted men detailed to training camps for commissions in the Infantry, Cavalry and Artillery.

After we had been a year in the war, and a draft act had been passed, no further necessity existed for inducement to civilians to train as officers, and no further provision after June 30, 1918, was made for pay to them,

Training camps were continued until November 11, 1918, but the appropriations for them were only for arms and ordnance equipment. Army Appropriation Act, July 9, 1918, 40 Stat. 876.

This recital has been necessary to show the surrounding circumstances in view of which this provision for the $100 monthly pay for enlisted men training for commissions should be construed. It makes clear that this legislation of June 15, 1917, was enacted merely to abolish the discriminating difference between civilians and enlisted men who were all training for the same commissions in the same camps, the former receiving three times the pay of the latter. It was a temporary leveling up. It was not the fixing of base pay. It was not a pay to which the fifty per cent. addition for flight duty could reasonably attach. Enlisted men under the Act of 1914 training in flight duty to become officers, before this Act of June 15, 1917, received $49.50, i. e., $33.00 plus $16.50. This increased the pay to $100 on a level with that of civilians engaged in the same duty and training. Such civilians, if any, were not entitled to fifty per cent. increase for flight duty. Why should it be assumed, therefore, that it was intended to pay these enlisted men fifty dollars more a month than civilians in a statute plainly designed to secure uniformity? But it is said that this is to repeal the Act of 1914 giving additional pay for flight duty to enlisted men, and repeals by implication are not favored. This is not to repeal the act. It is merely to hold that it is not applicable to a temporary provision or bonus for a particular purpose. In reaching this conclusion, we are confirmed by the departmental construction of these acts and by that of the accounting officers of the Treasury. We can not agree with the Court of Claims, therefore, that the fifty per centum addition to the regular pay of the enlisted aviation student applies to the $100 monthly pay allowed by the Deficiency Act of June 15, 1917.

But the Court of Claims went further and held that the $100 a month pay for such enlisted men continued beyond June 30, 1918, to which the Act of June 15, 1917, carried it. This conclusion is based on certain general provisions of two statutes. The first is the Act approved July 24, 1917, 40 Stat 243, to authorize temporary increase of the Signal Corps, to purchase and make airships and to appropriate for the same. That act put the temporarily enlisted men in the Signal and Aviation Corps on the same footing as to pay, allowances and pensions as enlisted men of the same grade in the Regular Army, made an appropriation of $640,000,000 for the purposes of the act and provided that enlisted men of the aviation section of the Signal Corps should be paid from funds transferred to their credit from Signal Corps appropriations. The second act relied on is that of July 9, 1918, 40 Stat. 850, in which it was provided that the $640,000,000 appropriated in the foregoing act, and the funds appropriated in the Act of May 12, 1917, 40 Stat. 69, 70, entitled "An Act making appropriations for the support of the Army for the fiscal year" 1918, should be made available until June 30, 1919. These statutes do not sustain the conclusion of the Court of Claims because the $100 pay for enlisted men in training was not provided for in either of these acts but in the Deficiency Act of June 15, 1917, which is not continued in effect until June 30, 1919. It is true that the Act of May 12, 1917, gives the Secretary of War the authority to pay civilians in training for reserve commissions $100 a month, but by the Act of July 9, 1918, no funds are appropriated to enable him to order such pay, and, as a matter of fact, after June 30, 1918, no such pay was allowed to civilians training for commissions. We are unable to see, therefore, in the acts relied on any legislative authority for paying $100 a month to enlisted men in training for commissions after that date. The situation reverted to that preceding the Act of June 15, 1917, and

the enlisted men in the Aviation Section became entitled to $33.00 a month pay and to $49.50 a month while engaged on flight duty.

The plaintiff below thus received all the pay which he was entitled to receive.

The judgment of the Court of Claims is

*Reversed.*